UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| SHIRLEY GRICE ANTHONY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:12-CV-00269 |
| | § | |
| GALVESTON COUNTY, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Plaintiff Shirley Grice Anthony, an African American female, asserts a race discrimination claim for unequal pay against her former employer, Galveston County. The County has moved for summary judgment, contending that Anthony is unable to identify workers of other races in similar positions who were paid less.

## I.    BACKGROUND[1]

Anthony began working in the Galveston County Clerk's Office in January 1970 and was the longest serving Galveston County employee as of her retirement in December 2010. During her time as a county employee, Anthony held several different positions including Assistant Bookkeeper and Senior Deputy County Clerk-Accounting.[2] At the time she filed her EEOC complaint in 2010, Anthony

---

[1] Given the summary judgment posture, the following recitation of the facts resolves all credibility determinations in Anthony's favor.

[2] Plaintiff's Complaint (Docket Entry No. 1 ¶ 10) alleges that "[u]pon Plaintiff's retirement she occupied the position of Supervisor of Bookkeeping and had occupied that position on termination for twelve (12) years," but there is no evidence presented indicating that she was a

was employed as Senior Deputy County Clerk-Accounting (CC/7).

In 2002, Anthony completed the Job Classification and Compensation Survey given to all employees prior to the County's overhaul of its job classification system. Docket Entry No. 23-32. The instructions for completing the compensation survey stated "If you perform duties of a supervisory nature, describe those duties specifically and in detail." *Id.* at 3. In the survey, Anthony described the effect of the work she produced within her department as "keeping up receipts and some need adjusting or if someone comes in for the money back from the registry you have to be up with it," making no mention of any supervisory duties there or anywhere else in the survey. *Id.* at 9. In the attachment to the survey wherein she listed the essential functions of her job, Anthony listed the following:

1. Maintains control of the bookkeeping which requires verifying balancing of each Clerk's money drawer at the end of the day, making bank deposits daily, receive and issue receipts of money going into the registry of the court and entering the new cases into Court Track (which requires entry into two (2) computer systems), write checks for all refunding transactions, adjustments to payments and revenues, making copies of all checks received before deposit, accept voucher payments, add daily the check and cash money received, making change for all money drawers as clerks need it.

2. Maintains complex bookkeeping reports.

3. Prepares warrant funds for the Country Treasure[r] for the different accounts to be received.

---

supervisor during the relevant time period.

    4.    Performs general administrative and clerical tasks such as copying, answering telephones and updating and maintaining files.

    5.    Maintains current knowledge of statutes, changes in laws, regulations relating to specific department responsibilities, and how to deposit certain fees collected and time period set by the Legislature.

    6.    Responds to general and complex questions and complaints regarding department.

    7.    May lead or train clerical support personnel within her department.

    8.    Assist in Elections where needed.

    9.    Maintains the Minor Accounts regarding amount of balance and interest credited to each.

    10.    Performs other office duties as required.

*Id.* at 5.

On August 30, 2004, Anthony signed a Job Description Certification certifying that she "read and underst[ood] the attached job description for [her] position of SR. DEPUTY COUNTY CLERK ACCOUNTING and that this job description is an accurate description of [her] work." Docket Entry No. 16-3 at 8. Under the section labeled "Supervisory Responsibility," the description simply says "None." *Id.* at 9. By comparison, the job description of Elaine Mitrovich—one of the employees the Complaint identifies as comparable to Anthony—explains in the "Supervisory Responsibility" section that: "This position exercises functional supervision over assigned department employees." *Id.* at 11. Anthony

did not sign any other Job Description Certification after 2004.  At the time Anthony retired, she had a grade & step of 12J1[3] with a $37,548.20 salary.  Docket Entry No. 23-17.

In December 2010, Anthony filed a complaint with the EEOC alleging that she was being paid less than coworkers of other races.  Anthony then filed this lawsuit on which Galveston County now seeks summary judgment.

## II.   STANDARD OF REVIEW

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment.  *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

---

[3] Per Galveston County's Salary Administration Policy:
"The salary table is divided into 30 pay grades (Grades 1-30).  There is a 5% spread between grades 1–20 and a 10% spread between grades 21–30.  Each grade also consists of 18 steps with approximately 2[.5]% between each step for a total salary range of approximately 50%."  Galveston County Human Resources Policy Manual 36 (Feb. 19, 2013)*,* http://www.co.galveston.tx.us/hr/Documents/HR%20Policy%20Manual-revised%202-19-13%20(FMLA%20%20Sick%20Leave)%20%20.pdf.  A position's grade is dependent upon its level of responsibility, required qualifications, and job duties and an employee will generally be promoted by steps within the grade based on longevity and performance.

### III. ANALYSIS

#### A. Disparate Treatment Standard

Anthony's claim is evaluated under the *McDonnell Douglas* framework for discrimination claims that rely on circumstantial evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The employee must first make out a *prima facie* claim of discrimination; if she can do so, the employer may then come forward with a nondiscriminatory justification for the adverse action; if the employer makes that showing, the employee must then produce evidence from which a jury could reject the employer's explanation and conclude that the actual motivation was discriminatory. *See id*.

To establish a *prima facie* case in a disparate pay suit, a plaintiff must prove "(1) that she is a member of a protected class, and (2) that she is paid less than a nonmember for work requiring substantially the same responsibility." *Uviedo v. Steves Stash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984). For the latter requirement, the work responsibilities for the better-paid employee must be "nearly identical" to those of the plaintiff. *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008); *Perez v. Texas Dep't of Criminal Justice, Institutional Div.*, 395 F.3d 206, 213 (5th Cir. 2004) ("[A] black plaintiff-employee claiming disparate treatment of white employees ha[s] to show that the white employees were treated differently under circumstances nearly identical to h[ers]." (citation

and internal quotation marks omitted)). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor, or had their employment status determined by the same person, and have essentially comparable [disciplinary] histories." *Frazier v. Sabine River Auth. Louisiana*, 509 F. App'x 370, 372 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 138 (2013), *reh'g denied*, 2013 WL 6223281 (U.S. Dec. 2, 2013) (quoting *Turner v. Kan. City S. Ry.*, 675 F.3d 887, 893 (5th Cir. 2012)). Anthony does not assert a disparate impact claim, so her disparate treatment claim must rely on more than general statistical evidence of pay differentials. *Taylor*, 554 F.3d at 523 ("[S]tatistical evidence alone does not establish or necessarily imply racially discriminatory practices.") (quoting *Thompson v. Leland Police Dep't*, 633 F.2d 1111, 1114 (5th Cir. 1980)). Rather than relying solely on statistics, she "must present *prima facie* evidence that [her] pay was lower than *specific* employees who are not members of the protected class." *Id.* (italics in original).

### B. Anthony Has Not Identified Caucasians With Nearly Identical Jobs Who Were Paid More

The following coworkers Anthony identifies as higher-paid comparables do not come close to satisfying the "nearly identical" standard.

- Rosaline Agee was Vital Statistics/Public Information manager, a grade 14 position with "functional or leadworker supervisory responsibility" and a $38,487 salary.

- Amy Carr served as Court Supervisor – Civil, a grade 16 position that "involved directing and overseeing the operations and activities of the Civil Court," entailing "significant duties in supervising and coordinating the work of other employees, as well as directing the activities of the section" and had a $44,633 salary.

- Patricia Koehler was Court Supervisor (Misdemeanor), CC/3, a grade 16 position that involved "significant duties in supervising and coordinating the work of other employees, directing the activities of the section, attending court, preparing and maintaining jury panels and serving as part of the department's management team" and came with a $45,748 salary.

- Elaine Mitrovich was Indexing Supervisor, CC6, a grade 12 position that included "providing functional or leadworker supervision over other department employees" and paid a $40,435 salary. Mitrovich held a higher-graded position than Anthony prior to the County's implementation of a new classification and compensation system in 2002.[4]

- Torry Wherry served as System Support Technician, CC/17, a grade 17 position that "provided professional-level information technology support" to the department and had duties including "hardware and software support and serving as the principal department contact for election processes related to automation" and had a $43,544 salary.

Docket Entry No. 16-1 at 7–14. As Anthony acknowledges in her Response, these employees "had their supervisory responsibilities recognized by both compensation and in title." Docket Entry No. 23 at 18. Agee, Carr, Koehler, and Wherry all held higher-graded positions than Anthony that included supervisory responsibilities, specialized skills, or positions of substantial trust, such as overseeing court operations and jury panels. None of these job responsibilities that

---

[4] In 2002, the salaries of Anthony and Mitrovich were $26,768 and $28,896, respectively.

would naturally lead to higher pay are included in the job description signed by Anthony certifying it as being "current, accurate, and reflective of [her] job duties" in 2003.[5]

Anthony appears to concede the lack of similarity in the positions held by these comparators: "Admittedly, the comparables listed above work in different positions than Plaintiff, and it should be noted that their position descriptions are not substantially the same responsibilities—but that is not Plaintiff's focus herein." Docket Entry No. 23 at 18; *see also id.* ("Each of the comparables had less tenure than Plaintiff but are recognized as Supervisors and were compensated accordingly."). Unfortunately for Anthony, that is the focus of Fifth Circuit law in disparate pay cases. The requirement stems from the basic economic reality that seniority alone does not determine pay. To take an example from the field of law, a seasoned ten-year paralegal will likely be paid less than a first-year associate (even though the paralegal is likely much more productive). Thus to rely on the salary of a higher-paid coworker to support an inference of discrimination, the coworker needs to be engaged in similar work that one would expect to receive similar pay absent unlawful discrimination.

---

[5] Anthony cites an organizational chart (Docket Entry No. 23-9) with an unclear provenance as evidence that she was a supervisor. The organizational chart shows Anthony's position as being "above" that of Accounting Technician, but it makes no mention of any specific supervisory responsibilities. Even assuming that this does indicate some supervisory role by Anthony, there is no evidence that this supervisory role was of the same nature as those of the alleged comparators Anthony provides, especially because they held positions in different departments with job descriptions that—unlike hers—included supervisory responsibilities.

The one identified comparable that even comes close to meeting the required level of similarity is Christina Welch.[6] Anthony contends that in 2004, Welch, who is Caucasian, was making more money despite being Anthony's "assistant." Docket Entry No. 1 ¶ 13. Welch had previously been County Clerk Coordinator, a grade 16 position, when she was reclassified as Accounting Technician (grade 12), "due to performance-related issues with Ms. Anthony." Docket Entry No. 16-1 at 11. The Clerk Coordinator position paid more than the Accounting Technician position, and the County Clerk did not reduce Welch's salary because she "would not penalize Welch by cutting her pay to fill a position that needed to be filled." Docket Entry No. 16-3 at 2. Between 2002 and 2004, Welch's pay ranged from $31,884 to $32,485 while Anthony's ranged from $26,768 to $29,972. Docket Entry No. 16-1 at 14. It is not clear that Welch was a suitable comparator even during this time when she was working in the same department as Anthony. Welch was "subject to continuing to perform many duties of a Court Clerk Coordinator in addition to performing accounting-related functions" during the time she was working with Anthony and it is unclear whether Anthony was supervising Welch. *See* Docket Entry No. 16-1 at 11 (Ritchie stating that she, not Anthony, supervised Welch); Docket Entry No. 16-3 at 6–9 (job descriptions Anthony signed on June 10, 2003 and August 30, 2004 in which "none" was given

---

[6] The Court considered the other employees named by Anthony but found insufficient similarity between their positions and hers for them to be appropriate comparators.

for supervisory duties); Docket Entry No. 23-18 at 2 (Anthony stating in her affidavit that "Tina [Welch] felt guilty that she worked under me but was paid more than me."). On June 10, 2003 and August 30, 2004 Anthony signed a document certifying that the job description for Senior Deputy County Clerk-Accounting "is current, accurate, and reflective of [her] job duties"—despite the word "none" appearing in the box listing supervisory responsibility both times. Docket Entry No. 16-3 at 6–9.

But even assuming Welch was performing nearly identical job responsibilities as those Anthony performed from 2002 through 2004, the statute of limitations prevents Anthony from using Welch as the comparator needed to make her *prima facie* showing. Welch stopped working for the County in 2004. In this lawsuit filed years later, Anthony cannot base a disparate pay claim on an alleged discriminatory pay disparity that is not within the statute of limitations. *Cf. Frazier*, 509 F. App'x at 372–73 (holding that the plaintiff's discriminatory pay claim under the Fair Pay Act was time-barred because once he was promoted to a different position he was "he was no longer affected by or subject to the allegedly discriminatory compensation decision because he and Sebastian could no longer have been comparators" (citing 42 U.S.C. § 2000e-5(e)(3)(A); *Turner v. Kan. City S. Ry.*, 675 F.3d 887, 893 (5th Cir. 2012))). This limitations problem for Anthony is different than the one resolved by the Lilly Ledbetter Fair Pay Act of 2009,

which allowed each payment of a discriminatory pay disparity with a coworker to count as the relevant starting point for calculating the statute of limitations even when the pay disparity began outside the limitations period.  Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (codified as amended in scattered sections of Titles 29 and 42 U.S.C.).  Here, any discriminatory pay disparity Anthony may have had with Welch both began *and ended* years prior to the limitations period.[7]  *Compare Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 647 (2007) (Ginsburg, J. dissenting) ("'Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII.'  Paychecks perpetuating past discrimination, we thus recognized, are actionable not simply because they are 'related' to a decision made outside the charge-filing period, but because they discriminate anew each time they issue." (quoting *Bazemore v. Friday*, 478 U.S. 385, 395–96 (1986)).  Anthony again appears to concede this point, stating that "[a]dmittedly, the information with regards to Welch is outside the statute of limitations."  Docket Entry No. 23 at 22.  Because Welch stopped working for the County in 2004, that is when any alleged wage discrimination against Anthony as to Welch would have been actionable.[8]

---

[7] And Anthony admits she was aware of the disparity with Welch when it was happening. Docket Entry No. 23-18 ("In 2003–2004, I learned from Tina Welch that she was being paid more than I.")

[8] That does not mean that the evidence related to Welch could have no probative value concerning any issues in this case.  If Anthony were able to make it to the pretext stage of *McDonnell-Douglas*, evidence concerning a time-barred discriminatory pay decision would

Anthony is thus unable to identify a similarly situated employee of a different race who was paid less than her during the relevant time period.[9] That ends the *McDonnell-Douglas* inquiry. It is worth noting, however, that the evidence indicates Anthony was not paid less than those employed in similar positions. At the time she filed her EEOC complaint in 2010, she worked as Senior Deputy County Clerk-Accounting (CC/7) earning $37,548.20. Galveston County's budge for fiscal year 2012 lists 2 "Senior Deputy County Clerk" positions with salaries of $38,487 (grade and step 17A) and $30,066 (grade and step 11C). That budget also lists 2 Accounting Technician positions with salaries of $34,017 and $30,066. Even considering these salaries that may have included two years of cost-of-living adjustment since Anthony's retirement, all but one are below her final salary of $37,548.20. Docket Entry No. 23-17. The one that is less than one thousand dollars above Anthony's involved a position with a substantially higher pay grade, even putting aside that it includes cost-of-living adjustments.

---

arguably be relevant to show that a pay disparity within the limitations period was the result of discrimination as opposed to a nondiscriminatory reason the defendant cited.

[9] Limitations would also pose a problem to the extent Anthony challenges the County's failure to promote her to an official supervisory position over Welch in 2002 (Anthony does not contend that she supervised anyone after Welch left in 2004). Although the complaint asserts only a disparate pay claim, Anthony's response to the summary judgment motion repeatedly states that she was "not recognized as a supervisor when others were likewise recognized." Docket Entry No. 23 at 17. Even if a failure to promote claim were properly pleaded, the Lilly Ledbetter Act does not apply to discrete acts like promotion decisions. *See Tillman v. S. Wood Preserving of Hattiesburg, Inc.*, 377 F. App'x 346, 350 n.2 (5th Cir. 2004) ("The Act does not apply to discrete acts such as the ones at hand." (citing *Harris v. Auxilium Pharm., Inc.*, 664 F. Supp. 2d 711, 746–47 (S.D. Tex. 2009))).

**IV. CONCLUSION**

For the reasons discussed above, Anthony cannot establish that she was the victim of wage discrimination due to her race, and summary judgment in the County's favor is warranted. Galveston County's Motion for Summary Judgment (Docket Entry No. 16) is therefore **GRANTED**.

**SIGNED** this 10th day of January, 2014.

_____
Gregg Costa
United States District Judge